IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| KATHY BAILEY, Trustee for the Next of Kin of Charles Bailey, Decedent<br><br>Plaintiff,<br><br>v.<br><br>MAYO CLINIC;<br>MICHELLE BOUQUET, PA., and<br>DONALD ENGEN, M.D.,<br><br>Defendants. | Case No. 17cv2582 PJS/TNL<br><br>RECEIVED<br>JUL 06 2017<br>CLERK<br>U.S. DISTRICT COURT<br>MINNEAPOLIS, MINNESOTA |

## COMPLAINT

Plaintiff, Kathy Bailey, Trustee for the Next of Kin of Charles Bailey, Decedent, by and through counsel, and for her causes of action against the defendants, Michelle Bouquet, P.A., Donald Engen, M.D. and Mayo Foundation, states:

### Parties

1. The Plaintiff, Kathy Bailey, is a resident of Ames, Story County, Iowa, and has been duly appointed as the Trustee for the Next of Kin of Charles Bailey, Decedent

2. Plaintiff Kathy Bailey was the lawfully wedded wife of Charles E. ("Chuck") Bailey from 1966 until Chuck's death in 2016.

3. Defendant Mayo Clinic is a nonprofit corporation organized under the laws of Minnesota that at all relevant times was in good standing and conducting business in Minnesota.

4. Defendant Michelle Bouquet, P.A., is a physician assistant licensed to practice medicine in the State of Minnesota, and at all material times was a resident of Minnesota practicing



SCANNED
JUL 0 6 2017
U.S. DISTRICT COURT MPLS

medicine in Rochester, Minnesota. She can be served at 201 W. Center St. Rochester, MN 55902.

5. Defendant, Donald Engen, M.D., is a physician licensed to practice medicine in the State of Minnesota, and at all material times was a resident of Minnesota practicing medicine in Rochester, Minnesota, who holds himself out publicly as and professes to be a specialist in the area of urology. He can be served at 201 W. Center St., Rochester, MN 55902.

6. On information and belief, all actions of Defendants Bouquet and Engen in relation to their treatment of Chuck generally and as more specifically set forth hereafter were performed in the course and scope of their employment or agency with Defendant Mayo Clinic, and as such Defendant Mayo Clinic is vicariously liable for their actions.

## Jurisdiction and Venue

7. This Court has personal jurisdiction over the defendants in this dispute because they are residents of Minnesota.

8. There is complete diversity between Plaintiff and Defendants, so jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1332, 2201 and 2202 in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is a dispute between citizens of different states.

9. Venue is properly established in this judicial district pursuant to 28 U.S.C. § 1391(a)(1) because a Defendant resides in this judicial district, and pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## Factual Allegations

10.     Charles Bailey (hereinafter "Chuck") presented to Mayo Clinic on July 10, 2014, with a chief complaint of gross hematuria, for evaluation including a cystoscopy and a urine cytology, the main tests done to diagnose bladder cancer.

11.     On July 10, 2014, Defendant Engen performed a cystoscopy, during which he noted inflammation and edema of Chuck's mucosa, but did not perform a biopsy.

12.     Also on July 10, 2014, urine was obtained from Chuck for a cytology study.

13.     On July 14, 2014, Defendant Bouquet saw Chuck for a follow-up office visit following the cystoscopy, at which time she noted that Chuck had gross hematology several weeks ago and that his urine cytology study was pending.

14.     Around that same timeframe, Defendant Mayo Clinic's lab read Chuck's urine cytology study as atypical, with abnormal urothelial cells.

15.     The atypical urine cytology with abnormal urothelial cells did not rule out bladder cancer and required close follow-up.

16.     Nonetheless, on July 15, 2014, Defendant Bouquet despite noting the urine cytology showed atypical abnormal urothelial cells, concluded and communicated to Chuck that there was "no evidence of malignancy" and that she would "not recommend any additional evaluation."

17.     Defendant Bouquet communicated to Chuck's primary care provider that there was no evidence of malignancy and no additional evaluation was recommended.

18.     Chuck continued to have gross hematuria thereafter, but no further workup was performed because of Defendant Bouquet's representation and recommendations.

19. On March 25, 2015, Chuck had a cystoscopy which showed a large, high grade bladder tumor.

20. On March 31, 2015, Chuck had a PET scan which showed findings consistent with metastatic involvement of lymph nodes in his left neck, left supraclavicular region, aorticopulmonary window region, and retroperitoneum below renal vascular pedicles.

21. On or about April 3, 2015, Chuck was diagnosed with metastatic stage IV bladder cancer.

22. Chuck thereafter suffered through a great deal of painful medical treatment in an effort to survive his cancer, rendering him unable to work and provide his normal and customary services to his family.

23. Most of the treatment Chuck endured would not have been necessary if his cancer had been timely diagnosed on or shortly after July of 2014.

24. On November 3, 2016, Chuck died.

### Count I—Wrongful Death Pursuant to M.S.A. § 573.02
### (Negligence of Defendant Michelle Bouquet, P.A.)

25. As a result of the negligence of Defendants, Plaintiffs have been damaged by the loss of decedent, and have been deprived of his comfort, assistance, and companionship, guidance, advice, assistance and protection. In addition, Plaintiff and the next-of-kin, are entitled to funeral expenses and burial, and other expenses, including reasonable expenses for support due to his last hospitalizations, including necessary medical and hospital expenses incurred as a result of the negligent condition resulting in his death, in addition to other and similar damages. Defendant Bouquet had a duty to exercise that degree of skill and care ordinarily used by physician assistants in like circumstances when providing medical treatment to Chuck.

26. Defendant Bouquet was negligent in one or more of the following particulars:

    a. In failing to ensure there was appropriate follow-up on Chuck's abnormal urine cytology result;

    b. By inappropriately telling Chuck there was no evidence of malignancy and no further workup was necessary;

    c. By inappropriately sending a letter to Chuck's primary care provider indicating there was no malignancy and no further workup was necessary; and/or

    d. In failing to timely diagnose Chuck's bladder cancer.

27. As a result of the negligence of Defendant Bouquet, Chuck's bladder tumor was not timely diagnosed and was allowed to grow and metastasize to his lymph nodes and other organs, causing his death and resulting in damages as described above.

### Count II—Wrongful Death Pursuant to M.S.A. § 573.02
### (Negligence of Defendant Donald Engen, M.D.)

28. Defendant Engen had a duty to exercise that degree of skill and care ordinarily used by urologist physicians in like circumstances when providing medical treatment to Chuck.

29. Defendant Engen was negligent in one or more of the following particulars:

    a. In failing to perform a biopsy given the Chuck's complaint of new gross hematuria;

    b. In failing to perform a biopsy given the findings of inflammation and edema during Plaintiff's cystoscopy;

    c. In failing to ensure there was appropriate follow-up on Chuck's abnormal urine cytology result; and

    d. In failing to timely diagnose Chuck's bladder cancer;

30. As a result of the negligence of Defendant Engen, Chuck's bladder tumor was not timely diagnosed and allowed to grow and metastasize to his lymph nodes and other organs, causing his death and resulting in damages as described above.

### Count III—Wrongful Death Pursuant to M.S.A. § 573.02
### (Negligence of Defendant Mayo Clinic)

31. Defendant Mayo Clinic is vicariously liable for the negligence of Defendant Engen and Defendant Bouquet as pled in Counts I & II.

32. Defendant Mayo Clinic had a duty to exercise that degree of skill and care ordinarily used by health care providers in like circumstances when providing medical treatment to Chuck.

33. Defendant Mayo Clinic was negligent in one or more of the following particulars:

   a. In failing to have appropriate policies and procedures to ensure that Chuck's complaint of new gross hematuria was appropriately examined including but not limited to obtaining a biopsy given the history of new gross hematuria and findings of inflammation and edema during Chuck's cystoscopy;

   b. In failing to have appropriate policies and procedures to ensure abnormal urine cytology results were appropriately followed-up; and

   c. In failing to timely diagnose Chuck's bladder cancer;

34. As a result of the negligence of Defendant Engen, Chuck's bladder tumor was not timely diagnosed and allowed to grow and metastasize to his lymph nodes and other organs, causing his death and resulting in damages as described above.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for an amount in excess of $50,000.00, and for it costs and disbursements herein, together with such other equitable and legal relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial on all issues triable to a jury.

Dated this 6th day of July, 2017.

Paul A. Sortland (#103573)
**SORTLAND LAW OFFICE, PLLC**
431 South Seventh Street, Suite 2415
Minneapolis, Minnesota 55415
(612) 375-0400
sortland@sortland.com

AND

Sean T. McGrevey **(Atty License No.)**
**ADAM & McGREVEY, P.A.**
9300 West 110th Street, Suite 470
Overland Park, Kansas 66210
(913) 647-0670
sean@adammcgrevey.com

(PRO HAC VICE PETITION PENDING)

**ATTORNEYS FOR PLAINTIFF**

### ACKNOWLEDGMENT

Paul A. Sortland, by signing above, hereby acknowledges that costs, disbursements, witness fees, and reasonable attorney's fees, may be awarded, pursuant to Minnesota Statutes § 549.211, for a party acting in bad faith or asserting a frivolous claim.